UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROWLAND J. MARTIN, JR.,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA *et al.*,

    *Defendants*.

Civil Action No. 23-2758 (TJK)

## MEMORANDUM OPINION

In January 2024, Rowland J. Martin, Jr., proceeding pro se, filed his First Amended Complaint, which asserts three counts against Edward Bravenec and Torralba Properties, LLC, and three counts against the United States. Defendants move to dismiss on several grounds. The Court will dismiss the case because Martin has failed to show that the Court has personal jurisdiction over Bravenec or Torralba Properties or that the United States has waived sovereign immunity for the claims against it, thereby depriving the Court of subject-matter jurisdiction. And the Court will deny Martin's motion for leave to amend his complaint as futile.

**I.    Background**

    **A.    Factual Background**

This suit is the latest skirmish in a litigation war between Martin and Bravenec over property in San Antonio, Texas.[1] According to the First Amended Complaint, at some point before 2006, Martin "advanced funding . . . to Moroco Ventures, LLC to enable that entity to purchase

---

[1] *See, e.g.*, *Martin v. Grehn* (*Martin I*), 546 F. App'x 415 (5th Cir. 2013); *Martin v. Bravenec* (*Martin II*), 627 F. App'x 310 (5th Cir. 2015); *Martin v. United States* (*Martin III*), No. 21-1987C, 2022 WL 793142 (Fed. Cl. Mar. 15, 2022), *reconsideration denied*, No. 21-1987C, 2022 WL 1154139 (Fed. Cl. Apr. 18, 2022), *aff'd by Martin v. United States* (*Martin IV*), No. 2022-1810, 2023 WL 1878576 (Fed. Cir. Feb. 10, 2023).

[a] property" in San Antonio, which allegedly caused him to have a "purchase money lien claim" over the property. ECF No. 7 ¶ 115. Then, in 2006, Bravenec and Albert McKnight, a non-party, bought the property from Moroco Ventures, LLC, allegedly "subject to a resulting trust in Martin's favor and subject to his purchase money lien claim encumbering the subject property." *Id.* ¶ 116. Bravenec then purportedly "transferred title to the property in 2014 to Carlos Torralba" subject to the same encumbrances previously attached to the property. *Id.* ¶ 117. Martin claims he still has an interest in that property, so he sued Bravenec and others in Texas courts several times. *Id.* ¶¶ 15–16; *Martin III*, 2022 WL 793142, at *1. So far, Martin's attempts have been unsuccessful, but he alleges that these suits have all been tainted by constitutional violations, fraud, perjury, and discrimination. ECF No. 7 ¶¶ 15–24; 121–40.

In 2021, Martin filed suit against the United States in the Court of Federal Claims, alleging that the district court in *Martin II* "committed a taking or exaction of purchase money line [sic] rights in violation of money mandating laws" when it both expunged a *lis pendens* lien Martin had filed against the San Antonio property and sanctioned him. ECF No. 7 ¶¶ 18–19, 28–32; *see also Martin III*, 2022 WL 1973142, at * 1, *3. The Court of Federal Claims ultimately dismissed that suit for lack of jurisdiction. ECF No. 7 ¶ 32.

The next year, "coinciding with the appeals process in [his Court of Federal Claims case], Martin" removed two Texas state-court cases involving the disputed property to federal court. ECF No. 7 ¶ 33. He then moved to dismiss the cases, but, in September 2022, a judge in the Western District of Texas remanded one of them because it "appeared to be closed at the time of its removal." *Id.* ¶¶ 33, 35 (quotation omitted). Martin alleges here that this remand "aggrieved" him, particularly because the judge who ordered the remand purportedly had "participated as a state appellate court judge in the same case" and thus had a conflict of interest. *Id.* ¶¶ 36–40.

Martin also alleges that, "[b]undled with" his "tangible property interests in real estate," he has an "intangible property interest" in "a non-exclusive spectrum license" and an invention that he claims to be patenting. ECF No. 7 ¶¶ 7, 13. He alleges that he is an inventor who has "applied for patent protection" for a "multichannel multimedia distribution apparatus" he created that operates similarly to existing technology "but at a dramatically reduced deployment and overhead costs [sic]." *Id.* ¶ 6. According to Martin, this patent and a corporation he started were designed "to bridge the digital divide" and serve "under-connected communities." *Id.* ¶¶ 8, 14.

Though Martin does not clearly lay out the connection between the San Antonio property and his alleged invention in the First Amended Complaint, he asserts that he intended "to recover damages from a prior real estate investment to fund a market trial position" and that the result of the litigation described above has "injured Martin's spectrum based and patent related investment expectations which included the use of the value of the lien interest he claims." ECF No. 7 ¶¶ 9, 130.

### B.   Procedural History

In September 2023, Martin filed a complaint against the United States, later adding Bravenec and Torralba Properties, LLC ("Torralba Properties"). ECF Nos. 1, 7. In his First Amended Complaint, Martin brings six counts. ECF No. 7, ¶¶ 113–50.

The first three counts are brought against Bravenec and Torralba Properties and focus on the disputed San Antonio property and their conduct during litigation over that property. In Count One, Martin asks the Court to issue a declaratory judgment and injunction recognizing Martin's "claim of purchase money lien interests" and quieting title in Martin's favor. ECF No. 7 ¶¶ 113–20. In Count Two, Martin alleges that Bravenec and Torralba Properties violated 42 U.S.C. §§ 1981 and 1982 based on Bravenec's "strategic litigation against public participation involving fraud" and efforts "to exclude Martin . . . from a real estate settlement in which he held the superior

3

in [sic] interest in title, thereby creating a disparity of treatment and impact in relation to the white person who owns Torralba Properties, LLC, namely Carlos Torralba." *Id.* ¶¶ 121–33. And in Count Three, Martin claims that Bravenec and Torralba Properties violated 42 U.S.C. § 1985 by retaliating against Martin for his prior lawsuits. *Id.* ¶¶ 134–40.

The last three counts are brought against the United States. In Count Four, Martin alleges that the United States is liable for money damages under the Federal Tort Claims Act ("FTCA") for "trespass on the case" committed by a judge in the Western District of Texas when that judge, allegedly with a conflict of interest, remanded one of Martin's removed cases back to state court.[2] ECF No. 7 ¶¶ 141–46. Martin then shifts tack in Count Five, asking for, under 47 U.S.C. § 1754, "a judgment to remedy collateral indifference to a clear and present risk of digital discrimination" by "direct[ing] the [Federal Communications Commission ("FCC")] and the Attorney General to confer with Martin" about: (1) the administration of 47 U.S.C. § 309(j)(4)(D) and (j)(13), (2) establishing a "digital equity common fund," and (3) "the disposition of the Petition for Administrative Remedies [Martin] filed on January 3, 2024." *Id.* ¶¶ 147–48. Finally, in Count Six, Martin "requests a transfer of jurisdiction for further proceedings" for any claims that qualify under 28 U.S.C. § 1631. *Id.* ¶¶ 149–50.

Defendants each move to dismiss on several grounds.[3] ECF Nos. 20, 23, 40. For their

---

[2] Martin also appears to allege that "the government" acted tortiously because that district judge was assigned to the case because of an "ineffective screening process." ECF No. 7 ¶ 144.

[3] Bravenec filed his Answer simultaneously with his motion to dismiss. ECF No. 22. Though defendants are "precluded from . . . filing a motion to dismiss" once they have already filed an answer, that rule does not require denying Bravenec's motion here. *See Lewis v. Schafer*, 571 F. Supp. 2d 54, 57 (D.D.C. 2008). In his submissions, Bravenec makes clear that his Answer is subject to his Rule 12 motions and requests that it be considered only after those motions are resolved. ECF No. 22 at 1; ECF No. 23 at 1. Thus, Bravenec has not violated Rule 12's requirement that motions to dismiss be filed before a responsive pleading. And Bravenec's Answer similarly does not moot his motion to dismiss. *See Brunig v. Clark*, 560 F.3d 292, 294 (5th Cir. 2009).

parts, Bravenec and Torralba Properties argue that the Court lacks personal jurisdiction over them, that venue is improper in the District of Columbia, and that Martin has failed to plausibly state a claim. ECF No. 20 at 1; ECF No. 23 at 3–4. The United States similarly argues that venue is improper and that Martin has failed to state a claim, and it also argues that the Court lacks subject-matter jurisdiction. ECF No. 40 at 2. Martin responds to the three motions with those of his own. First, he moves to dismiss Bravenec's Answer and motions. ECF No. 25. Then, in response to Torralba Properties' motion, Martin moves for a more definite statement. ECF No. 26. Finally, Martin filed an "objection" to the United States' motion and requests leave to file a second amended complaint. ECF No. 43. The Court construes all three as responses to the relevant motions.

## II. Legal Standards

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing a prima facie case that personal jurisdiction exists." *Flynn v. R.D. Masonry, Inc.*, 736 F. Supp. 2d 54, 57 (D.D.C. 2010). To satisfy that burden, a plaintiff must "alleg[e] specific acts connecting the defendant with the forum." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000). When doing its analysis, the Court is not limited to the facts alleged in the complaint. *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013). While "the court must resolve any factual discrepancies with regard to establishing personal jurisdiction in favor of the plaintiff," it may also look outside the pleadings—to evidence such as affidavits or declarations—to determine undisputed jurisdictional facts. *Id.*

---

In Bravenec's motion to dismiss, he also alternatively requests that the Court transfer venue. ECF No. 23 at 4–5. The Court need not address his request for transfer because it will dismiss the case.

A plaintiff similarly bears the burden to show that the court has subject-matter jurisdiction in response to a Rule 12(b)(1) motion to dismiss. *White v. United States*, 791 F. Supp. 2d 156, 159 (D.D.C. 2011). As with Rule 12(b)(2) motions, a court may look beyond the pleadings to determine whether it has jurisdiction over a case or claim. *Bailey v. Wash. Metro. Area Transit Auth.*, 696 F. Supp. 2d 68, 71 (D.D.C. 2010). Thus, "[w]hen necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record." *Id.*

Because Martin is pro se, the Court must construe his complaint liberally. *Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 84 (D.D.C. 2013). But that does not mean that Martin may disregard the Federal Rules of Civil Procedure, nor that the Court should do his work for him. *Id.* "There is a difference between liberally construing ambiguities in *pro se* plaintiffs' complaints and completely rewriting portions of the complaint." *Bamdad v. DEA*, 617 F. App'x 7, 9 (D.C. Cir. 2015) (citation omitted).

### III.  Analysis

#### A.  The Court Lacks Personal Jurisdiction over Bravenec or Torralba Properties

A federal district court sitting in the District of Columbia has personal jurisdiction over a defendant when he "is subject to the jurisdiction of a court of general jurisdiction in the" District. Fed. R. Civ. P. 4(k)(1)(A).[4]

> Two requirements must be met for a District of Columbia court to exercise personal jurisdiction over a defendant. First, the defendant must qualify for either general or specific jurisdiction under the relevant District of Columbia statutes. *See* D.C. Code §§ 13–422 to –423. Second, the exercise of jurisdiction over the defendant must comply with the Due Process Clause.

---

[4] Martin does not argue that any of the federal statutes at issue permit nationwide service of process or that any other basis for personal jurisdiction applies, so the Court does not consider such arguments. *See* Fed. R. Civ. P. 4(k); *cf. also Canuto v. Mattis*, 273 F. Supp. 3d 127, 138 n.14 (D.D.C. 2017).

6

*Bradley v. DeWine*, 55 F. Supp. 3d 31, 39 (D.D.C. 2014). As for general jurisdiction, District law establishes that "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. And the law governing specific jurisdiction clarifies that such personal jurisdiction lies only when a claim arises from at least one of various personal, property, or business relationships a defendant may have in the District. *Id.* § 13-423. Finally, due process requires a plaintiff to show that there are "sufficient 'minimum contacts' between 'the defendant[s], the forum, and the litigation' to satisfy the Due Process Clause." *Bradley*, 55 F. Supp. 3d at 40 (alteration in original) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 203–04 (1977)).

Martin fails at both steps as to Bravenec and Torralba Properties. As to general jurisdiction, he does not even attempt to show that Bravenec is "domiciled in . . . the District of Columbia." D.C. Code § 13-422. Instead, his operative complaint alleges only that Bravenec's "law office is located" in Texas. ECF No. 7 ¶ 2. Similarly, Martin alleges that Torralba Properties' "business office is located" in Texas. *Id.* So Martin has not shown that Torralba Properties is "organized under the laws of, or maintain[s] [its] principal place of business in, the District of Columbia." D.C. Code § 13-422. Furthermore, both Bravenec and Torralba Properties have submitted declarations showing that they have no residential or business ties to the District of Columbia. ECF No. 20-2; ECF No. 23-1. Thus, the Court lacks general personal jurisdiction over either.[5]

---

[5] District law also permits general jurisdiction over foreign corporations "doing business in the District." D.C. Code § 13-334(a); *Canuto*, 273 F. Supp. 3d at 139. As Torralba Properties is an LLC and not a corporation, it is unclear whether this statute applies to it. But even if it does, "this Court can exercise 'doing business' general jurisdiction over [Torralba Properties] only if its contacts with the District of Columbia 'are so "continuous and systematic" as to render [it] essentially at home' in the District." *Canuto*, 273 F. Supp. 3d at 139 (quoting *Goodyear Dunlop Tires*

As for specific jurisdiction, Martin again fails to grapple with the requirements of District law. He does not, for example, allege that Bravenec and Torralba Properties have conducted any business in the District, committed any torts in the District, or are linked to the District in any way. *See* D.C. Code § 13-423. Instead, he argues only that "supplemental jurisdiction within the meaning of 28 U.S.C. § 1367" is a form of "special jurisdiction." ECF No. 25 at 20. But § 1367 is a subject-matter-jurisdiction statute, so it cannot supply a basis for personal jurisdiction.[6] *See Nat'l R.R. Passenger Corp. v. R. & R Visual, Inc.*, No. 05-cv-822 (GK), 2007 WL 2071652 (D.D.C. July 19, 2007) ("Supplemental jurisdiction relates to subject matter jurisdiction. It is not a means for obtaining personal jurisdiction over parties not otherwise properly before the Court.") And again, both Bravenec and Torralba Properties have submitted affidavits denying the existence of any contacts with the District that would support specific jurisdiction. *See* ECF No. 20-2; ECF No. 23-1.

For these reasons, Martin has failed to carry his initial burden to show that District law would permit a court of general jurisdiction in the District to exercise personal jurisdiction over Bravenec or Torralba Properties.

Martin also comes up well short on the second step: the constitutional requirement. A plaintiff must also show that there are "sufficient 'minimum contacts' between 'the defendant[s],

---

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Because Martin "has not alleged that [Torralba Properties] has had *any* contacts with the District of Columbia, let alone continuous and systematic contacts," *id.* at 139–40, and since Torralba Properties has asserted as much without contradiction, *see generally* ECF No. 7; ECF No. 20-2 ¶¶ 4–7, the Court has no basis to find that it has such jurisdiction here.

[6] To the extent Martin tries to rely on pendant personal jurisdiction, that doctrine requires that a court possess jurisdiction over *some* claims against a defendant. *See Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 12 n.6 (D.D.C. 2016). For the reasons explained, that is not so here.

8

the forum, and the litigation' to satisfy the Due Process Clause." *Bradley*, 55 F. Supp. 3d at 40 (alteration in original) (quoting *Shaffer*, 433 U.S. at 203–04).  But, as mentioned above, Martin has not alleged that either Bravenec or Torralba Properties has any contacts with the District of Columbia, much less sufficient contacts that would permit the Court to conclude that either of them "purposefully avail[ed] [themselves] of the privilege of conducting activities within the [District], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253–54 (1958).

For all these reasons, the Court lacks personal jurisdiction over Bravenec and Torralba Properties, so the Court will dismiss the claims against them.

**B.    Sovereign Immunity Bars the Claims Against the United States, so the Court Lacks Subject-Matter Jurisdiction over Them**

In suits against the United States, "a plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006); *Yee v. Jewell*, 228 F. Supp. 3d 48, 53 (D.D.C. 2017).  Thus, a court will only have subject-matter jurisdiction over claims against the Federal Government when Congress has (1) "provided an affirmative grant of subject-matter jurisdiction" and (2) "waived the United States's immunity to suit." *Yee*, 228 F. Supp. 3d at 53.  And as the Supreme Court has explained, such a waiver "must be unequivocally expressed in statutory text, . . . will not be implied, . . . [and] will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Martin alleges that the United States has waived sovereign immunity through the FTCA and the Tucker Act.[7]  ECF No. 7 ¶ 61.  He is right that both the FTCA and the Tucker Act waive

---

[7] The Court construes Martin's reference to the Tucker Act as invoking both the "Little" Tucker Act, 28 U.S.C. § 1346(a)(2), and the "Big" Tucker Act, *id.* § 1491(a)(1).  Both statutes

the United States' sovereign immunity in some cases. *See Bormes*, 568 U.S. at 10 (Tucker Act); *Best v. United States*, 522 F. Supp. 2d 252, 256 (D.D.C. 2007) (FTCA). But neither statute waives the United States' sovereign immunity for Martin's claims.

In Count Four, Martin claims that the United States is liable for money damages because it committed a "trespass on the case" when the Western District of Texas remanded a case to state court. ECF No. 7 ¶¶ 62, 142, 144. First, the Big Tucker Act does not apply as it vests jurisdiction—and thus waives sovereign immunity—only in the Court of Federal Claims, not the district courts. 28 U.S.C. § 1491(a)(1). Second, neither Tucker Act applies for more substantive reasons: as relevant here, they limit their coverage to claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). Count Four—based in tort under Texas law, ECF No. 7 ¶ 142—does not fall into any of these enumerated categories of cases. Indeed, both statutes expressly exclude claims "for liquidated or unliquidated damages" in cases "sounding in tort." 28 U.S.C. §§ 1346(a)(2), 1491(a)(1).

The FTCA also does not waive the United States' sovereign immunity as to Count Four. To establish jurisdiction under the FTCA, a plaintiff must "demonstrate that the claim asserted is the kind permitted by statute." *Best*, 522 F. Supp. 2d at 256. And the FTCA lays out six elements that define the claims permitted. *See* 28 U.S.C. § 1346(b)(1).[8] "[E]ven though a plaintiff need not

---

provide limited waivers of sovereign immunity, with "the Little Tucker Act creat[ing] jurisdiction in the district courts . . . for covered claims of $10,000 or less, [and] the Tucker Act assign[ing] jurisdiction [over covered claims] to the Court of Federal Claims regardless of monetary amount." *United States v. Bormes*, 568 U.S. 6, 10 n.2 (2012).

[8] Claims actionable under the FTCA must be "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the

10

*prove* a § 1346(b)(1) jurisdictional element for a court to maintain subject-matter jurisdiction over his claim, a plaintiff must plausibly allege all six FTCA elements . . . for a court to have subject-matter jurisdiction over the claim." *Brownback v. King*, 592 U.S. 209, 217–18 (2021) (citation omitted). The sixth of those elements is that the tort claim presents "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiff has failed to plausibly allege this element.

To begin, Martin has not plausibly alleged that the Western District of Texas's remand of his case was tortious. For allegations to be plausible, a pleading must offer more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But all Martin provides is the naked assertion that case's assignment to a particular judge and the subsequent remand constituted "trespass on the case [which] is a recognized ground for common law liability in the state of Texas." ECF No. 7 ¶ 142. He does not allege the elements of that tort, much less how the conduct alleged satisfies those elements. Nor does Martin grapple with Texas doctrines of judicial immunity. *See Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002) (recognizing such immunity); *see also Medina v. United States*, 259 F.3d 220, 225 n.2 (4th Cir. 2001) (noting the relevance of state-law immunities in the FTCA context). Thus, Martin has not plausibly alleged that "the United States, if a private person, would be liable to the claimant in

---

negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (alterations in original) (quoting 28 U.S.C. § 1346(b)).

11

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).[9]

The Court similarly lacks subject-matter jurisdiction over Count Five, where Martin seeks a declaratory judgment under 47 U.S.C. § 1754(c) to "remedy collateral indifference to a clear and present risk of digital discrimination." ECF No. 7 ¶ 148. None of the statutory provisions Martin cites waives the United States' sovereign immunity. For example, the FTCA provides no waiver because Martin is not seeking "money damages" through this count. 28 U.S.C. § 1346(b)(1). The Tucker Act does not apply for similar reasons, as it waives sovereign immunity "only if the plaintiff seeks money." *Kidwell v. Dep't of Army, Bd. for Correction of Mil. Recs.*, 56 F.3d 279, 285 (D.C. Cir. 1995). 47 U.S.C. § 1754(c) likewise fails to unambiguously waive the United States' sovereign immunity. That provision lays out a general policy that the FCC and Attorney General must "promote equal access to robust broadband internet access service by prohibiting deployment discrimination." 47 U.S.C. § 1754(c). Yet nowhere does it waive sovereign immunity if someone thinks that the FCC and Attorney General are mishandling their responsibilities. *See generally id.* 47 U.S.C. §§ 151 and 309(j)(4)(D) & (j)(13) also lay out various federal broadband policies, yet none contains anything remotely resembling a waiver of sovereign immunity. *See generally* 47 U.S.C. §§ 151; 309(j)(4)(D), (j)(13). Finally, to the extent Martin relies on the Declaratory Judgment Act, that Act "does not provide a waiver of sovereign immunity." *Stone v. HUD*, 859 F. Supp. 2d 59, 64 (D.D.C. 2012). In the end, Martin has identified no statute unambiguously waiving

---

[9] Even if, as Martin alleges, the circumstances of the court's remand were procedurally irregular in some way, that does not alter this conclusion. *See Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009). Failure to comply with a statutory duty only implicates the FTCA when that failure also contravenes state tort law. *Id.* at 510. Because Martin has not plausibly alleged that any government agent committed a state-law tort, any potential failure to comply with federal law is irrelevant.

the United States' sovereign immunity for Count Five.[10]

### C. Transferring the Case Is Inappropriate Because the Court of Federal Claims Also Lacks Jurisdiction

In Count Six, Martin does not bring a cause of action but asks the Court to transfer the case to the Court of Federal Claims. Under 28 U.S.C. § 1631, when a court determines it lacks jurisdiction over a case, "it shall, if it is in the interest of justice, transfer [the case] to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." The Court will decline to transfer this case as the Court of Federal Claims would similarly lack jurisdiction.

First, as for Martin's claims against Bravenec and Torralba Properties, "[t]he Court of Federal Claims does not have jurisdiction over suits against private parties; it only has jurisdiction over suits against the United States." *Edelmann v. United States*, 76 Fed. Cl. 376, 380 (2007). Second, as for the claims against the United States, Martin's failure to identify a valid waiver of sovereign immunity would preclude suit there just as much as it does here. *E.g.*, *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1126–27 (Fed. Cir. 2004). In addition, the Court of Federal Claims lacks jurisdiction to grant the non-monetary relief Martin seeks in Count Five. *See Richardson v. Morris*, 409 U.S. 464, 465 (1973).

### D. Leave to Amend the Complaint Would Be Futile

Martin also seeks leave to amend the First Amended Complaint. ECF No. 43 at 1. "[A]fter a responsive pleading has been served, 'a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (quoting Fed. R. Civ. P. 15(a)).

---

[10] Martin also makes scattershot reference to other federal statutes in the First Amended Complaint, but none waives sovereign immunity.

13

Though such leave should be freely given, it is inappropriate in the face of "undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Id.* (quoting *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999)).

Martin seeks leave to amend "(1) to clarify that the injury in tort is traceable in part to" the PACER-CM/ECF system; "(2) to clarify that Congress constituted the Administrative Office of the U.S. Courts to perform administrative functions," including those related to PACER; "(3) to clarify the existence of a strong technical and financial case for adopting a tort liability regime to regulation automated screening errors," such as those he alleges infected the remand of his case; and "(4) to broaden the legal analysis to include intervening changes in law," such as the issuance of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). ECF No. 43 at 6–7. He also seeks to amend Count Six to allege that the remand order constituted a taking under the Fifth Amendment. *Id.* at 1.

But none of these changes would cure the jurisdictional defects identified above. Martin does not, for example, attempt to allege additional facts to support personal jurisdiction over Bravenec or Torralba Properties, and it is hard to see how he could. *See* ECF No. 23-1; ECF No. 20-2. Nor does Martin identify any new statutes that clearly waive the United States' sovereign immunity for Counts Four and Five. For example, he cites 28 U.S.C. § 612. But that section establishes and directs the "Judiciary Information Technology Fund," a fund within the United States Treasury relating to judicial use of information technology resources. 28 U.S.C. § 612. It is not "indicative of consent" to be sued, ECF No. 43 at 11, nor is it a clear and express waiver of sovereign immunity, *Lane*, 518 U.S. at 192.[11]

---

[11] The same is true of the other statutes Martin cites, such as 28 U.S.C. § 133 (dealing with the appointment and number of district judges) and 28 U.S.C. § 137 (governing the division of

Finally, Martin seeks leave to amend Count Six to more clearly allege that the Western District of Texas's remand of his case constituted a taking, purportedly warranting transfer to the Court of Federal Claims. The Fifth Amendment provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. That Amendment requires takings claimants to show that the government has sufficiently interfered with their property interests such that the government action can fairly be considered a "taking." *See, e.g.*, *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124–25 (1978). Yet courts have also realized that a governmental agent's interference with property interests alone is insufficient to support a takings claim. Instead, a takings "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993). In other words, the taking must be an official, valid, and authorized action of the United States. That is because, when an officer of the United States takes a person's property *without* authorization, title in the seized property will not vest in the United States itself. *Id.* at 803. And if title does not vest in the United States, then it has taken no property such that the original owner will have a right to just compensation. *Id.*

Even though the Court of Federal Claims generally has jurisdiction to hear takings claims, it lacks such jurisdiction when the asserted claims are so "vague, conclusory, and unsupported" such that they do not "show that the court ha[s] jurisdiction"—in other words, that the claim is in fact a takings claim. *Martin IV*, 2023 WL 1878576, at *3. Martin's second response to the United States' motion to dismiss—a rambling and convoluted commentary on double jeopardy, the right

---

work among courts with multiple judges). Martin also does not meaningfully contest the United States' argument that 28 U.S.C. § 1498(a), which waives sovereign immunity for certain patent suits, is inapplicable here. The same is true for the Mandamus Act and the Administrative Procedure Act, so the Court treats such arguments as conceded.

to confrontation, and various constitutional provisions—shows that his amended claim would fit that bill. For example, he does not even identify what was taken from him. *See* ECF No. 46 at 30–37. At best, he (nonsensically) claims that the Western District's deficient screening procedures and remand improperly "placed a servitude on protected property interests and investment expectations that ripened with the taking by remand of a federal court chose in action that was significant;y [sic] degraded in viability and in value on September 29, 2022." *Id.* at 35. He then asserts that those interests "arise under communications laws, patent laws and supply chain diversity standards," again without identifying them. *Id.* At bottom, then, Martin has identified no property interest he alleges was taken from him.

But even if Martin had identified an alleged property interest, he has repeatedly asserted that the Western District's actions were invalid, improper, and unauthorized. *E.g.*, ECF No. 46 at 35. So his own allegations preclude a finding that what occurred was a taking. *Tabb Lakes, Ltd.*, 10 F.3d at 802–03 (Fed. Cir. 1993). Thus, Martin's proposed takings claim is so "vague, conclusory, and unsupported" as to preclude Court of Federal Claims jurisdiction. *Martin IV*, 2023 WL 1878576, at *3. Indeed, the Court of Federal Claims has already determined as much. *Martin III*, 2022 WL 793142, at *4 ("[Martin] has failed to allege that a protectible property interest has been taken [or that] the challenged government action was valid, as would be required for this Court to have jurisdiction over such a claim."). So Martin's proposed amendment would be futile because the Court would still be unable to transfer the case.

For these reasons, the Court finds that Martin's proposed amendment would not remedy the identified deficiencies in his complaint and so would be futile. Thus, it will deny Martin's motion to amend the complaint.

## IV. Conclusion

For all the above reasons, the Court will grant Defendants' motions to dismiss and deny

Martin's motion for leave to amend the complaint.

    A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: January 27, 2025